**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| DEFENDERS OF WILDLIFE<br>1130 17th Street, NW<br>Washington, DC 20036,<br><br>    and<br><br>CENTER FOR BIOLOGICAL DIVERSITY<br>378 N Main Avenue<br>Tucson, AZ 85701,<br><br>    *Plaintiffs*<br><br>    v.<br><br>CHRIS OLIVER, in his official capacity as<br>ASSISTANT ADMINISTRATOR FOR<br>NATIONAL OCEANIC AND ATMOSPHERIC<br>ADMINISTRATION FISHERIES<br>1315 East-West Highway<br>Silver Spring, MD 20910,<br><br>WILBUR L. ROSS, in his official capacity as<br>SECRETARY OF THE DEPARTMENT OF<br>COMMERCE<br>1401 Constitution Avenue, NW<br>Washington, DC 20230,<br><br>    and<br><br>NATIONAL MARINE FISHERIES SERVICE<br>1315 East-West Highway<br>Silver Spring, MD 20910,<br><br>    *Defendants*. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.      Plaintiffs Defenders of Wildlife and Center for Biological Diversity bring this action for declaratory and injunctive relief to remedy the National Marine Fisheries Service's ("NMFS") failure to complete required consultation under the Endangered Species Act ("ESA") regarding the effects of NMFS's continued authorization of fisheries managed under the Atlantic Highly Migratory Species Fishery Management Plan ("HMS FMP") on the oceanic whitetip shark and the giant manta ray.  By failing to complete consultation, NMFS is failing to ensure that its activities do not jeopardize the continued existence of these species, in violation of Section 7 of the ESA and its implementing regulations.

2.      The oceanic whitetip shark and giant manta ray have suffered precipitous population declines of up to 88% and 95%, respectively, in recent decades.  These declines are due primarily to significant fishing pressure in the form of incidental capture and death in fisheries targeting other species ("bycatch") and targeted catch.  Ongoing fishing-related mortality and harm continue to threaten each species' existence.

3.      In recognition of these population declines and ongoing threats, NMFS issued final rules in January 2018 listing the oceanic whitetip shark and the giant manta ray as threatened species under the ESA.

4.      Section 7 of the ESA requires every federal agency to ensure, through consultation with the relevant federal wildlife agency (here, NMFS's Office of Protected Resources), that any agency action that *may affect* a threatened or endangered species will not jeopardize the species' continued existence.

5.      In the time since listing these two species, NMFS's Office of Sustainable Fisheries has continued to authorize individual fisheries managed under the HMS FMP

(collectively, "HMS Fisheries") that affect the oceanic whitetip shark and giant manta ray through bycatch and/or targeted fishing.  Capture in HMS Fisheries can kill or seriously harm individual oceanic whitetip sharks and giant manta rays, contributing to population reductions and diminishing the likelihoods of these species' survival and recovery.

6.      NMFS, however, has not completed the required ESA consultation on the HMS Fisheries' effects on the oceanic whitetip shark or giant manta ray.

7.      NMFS's continued authorization of the HMS Fisheries without first completing this required consultation violates the agency's procedural duty to complete consultation and its substantive duty to avoid jeopardy to the continued existence of these species under Section 7 of the ESA.  16 U.S.C. § 1536(a)(2).

8.      Plaintiffs therefore ask this Court to declare that NMFS is in violation of the ESA and its implementing regulations and to order NMFS to complete the required consultations and issue final biological opinions on the HMS Fisheries' effects on the oceanic whitetip shark and giant manta ray within 90 days.

**PARTIES**

9.      Plaintiff DEFENDERS OF WILDLIFE ("Defenders") is a nonprofit, science-based conservation organization dedicated to the protection and restoration of all native wild animals and plants in their natural communities and the preservation of the habitats that they depend on.  Founded in 1947, it is one of the nation's leading advocates for imperiled species, including marine species such as sharks, rays, whales, dolphins, and sea turtles, and their habitats.  Defenders is headquartered in Washington, DC, with regional and field offices around the country in California, Oregon, Idaho, Washington, Alaska, Montana, Arizona, New Mexico, Colorado, Texas, North Carolina, and Florida.  At the international level, Defenders worked to obtain the designation of the oceanic whitetip shark and giant manta ray as Appendix II species

under the Convention on International Trade in Endangered Species of Wild Fauna and Flora,

and continues to advocate for these species' protections from fisheries-related mortality at the

International Convention for the Conservation of Atlantic Tuna, a regional fisheries management

organization to which the U.S. is a contracting party.  At the domestic level, Defenders

petitioned NMFS to list these species under the ESA.  More broadly, Defenders pursues active

litigation and legal and legislative advocacy strategies to protect our nation's oceans and

irreplaceable marine wildlife heritage.  Defenders has more than 408,000 members and donors

nationwide, including members who live and recreate along the Atlantic and Gulf of Mexico

coasts.  Defenders brings this action for itself and as representative of its members.

10.     Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("Center") is a nonprofit

corporation that maintains offices across the country, including in Washington, DC; New York;

and Florida.  The Center advocates for the protection of threatened and endangered species and

their habitats through science, policy, and environmental law.  The Center's Oceans Program

focuses specifically on conserving marine ecosystems and seeks to ensure that imperiled species

such as sharks and rays, marine mammals, corals, and sea turtles are properly protected from

destructive practices in our oceans.  In pursuit of this mission, the Center has been actively

involved in securing ESA protections for imperiled sharks, rays, other fish, marine mammals,

and sea turtles, and protecting these animals and other marine wildlife from catch and

entanglement in deadly fishing gear.  The Center has more than 69,500 members, including

members who live and recreate throughout the Gulf of Mexico and Atlantic coast.  The Center

brings this action on behalf of itself and its members.

11.     Plaintiffs and Plaintiffs' members and staff regularly use, enjoy, and benefit from

the marine environment in the Atlantic and Gulf of Mexico waters of the United States and

4

beyond.  Plaintiffs and Plaintiffs' members and staff regularly use, enjoy, and benefit from the presence of healthy marine life—specifically including sharks and rays—and a healthy marine ecosystem in those waters for the purposes of recreation, commerce, scientific study, aesthetics, education, and other environmental purposes.  For example, Plaintiffs' members and staff regularly sail, kayak, scuba dive, and go out on boats to enjoy the marine habitat and look for and photograph oceanic whitetip sharks and giant manta rays.  Plaintiffs' members and staff intend to continue to frequently engage in these activities and to use and enjoy oceanic whitetip sharks and giant manta rays and their habitats in the future.

12.     NMFS's authorization of the HMS Fisheries causes mortality and injuries to oceanic whitetip sharks and giant manta rays, among other marine life, in Atlantic and Gulf of Mexico waters.  NMFS's failure to complete consultations regarding the effects of the HMS Fisheries therefore has caused and is causing harm to the conservation, recreational, scientific, and aesthetic interests of Plaintiffs and their members and staff in oceanic whitetip sharks, giant manta rays, and the habitats on which they depend.  Plaintiffs and their members and staff rely on NMFS to comply with its consultation obligations under the ESA to manage HMS Fisheries in such a way that will protect oceanic whitetip sharks and giant manta rays.  NMFS's failure to complete consultation for these species fails to ensure that its actions do not jeopardize the continued existence of the imperiled oceanic whitetip shark and giant manta ray, and deprives them of additional protections that are vitally important to their survival and eventual recovery. NMFS's failure to complete consultation diminishes the aesthetic, recreational, spiritual, scientific, and other interests of Plaintiffs and their members and staff, because without action, oceanic whitetip sharks and giant manta rays are more vulnerable to targeted catch and bycatch in HMS Fisheries, reducing the likelihood that Plaintiffs will be able to continue their use and

enjoyment of these species. Additionally, Plaintiffs and their members and staff regularly comment on agency actions and environmental analyses involving the regulation of U.S. fisheries. NMFS's failure to comply with the ESA deprives Plaintiffs and their members and staff of the right to participate meaningfully in agency decisionmaking and causes them procedural and informational injuries. Until NMFS complies with its procedural and substantive obligations under the ESA, the interests of Plaintiffs and Plaintiffs' members and staff are being, and will continue to be, adversely affected.

13.     These harms can only be remedied if NMFS complies with all requirements of the ESA, and completes the necessary consultations concerning the effects that the agency's continued authorization of HMS Fisheries has on the threatened oceanic whitetip shark and giant manta ray.

14.     Defendant CHRISTOPHER OLIVER is sued in his official capacity as the Assistant Administrator for National Oceanic and Atmospheric Administration Fisheries (also known as NMFS). NMFS is the agency to which the Secretary of Commerce has delegated the authority to manage federal fisheries, including the HMS Fisheries, pursuant to the Magnuson-Stevens Fishery Conservation and Management Act ("MSA"). NMFS is also the agency with responsibility for administering and implementing the ESA with respect to certain marine species. The Assistant Administrator is responsible for implementing and fulfilling NMFS's duties under the ESA and MSA when authorizing federal fisheries. The Assistant Administrator is responsible for complying with the ESA when taking any action that may affect threatened or endangered species.

15.     Defendant WILBUR ROSS is sued in his official capacity as the Secretary of the U.S. Department of Commerce ("Secretary"). Congress charged the Secretary with

implementing and administering the MSA.  The Secretary is also responsible for administering

and implementing the ESA with respect to certain marine species.  The Secretary is responsible

for complying with the ESA when taking any action that may affect threatened or endangered

species.

16.     Defendant NATIONAL MARINE FISHERIES SERVICE is the agency to which

the Secretary of Commerce has delegated the authority to manage federal fisheries pursuant to

the MSA.  NMFS also is the agency with responsibility for administering and implementing the

ESA with respect to certain marine species.  NMFS is responsible for complying with the ESA

when taking any action that may affect threatened or endangered species.

JURISDICTION AND VENUE

17.     This case is brought under the ESA, 16 U.S.C. §§ 1531–1544.  This Court has

jurisdiction over this action pursuant to 16 U.S.C. § 1540(g) (ESA) and 28 U.S.C. § 1331

(federal question).

18.     This Court has authority to grant the requested relief under the ESA, 16 U.S.C.

§ 1540(g)(1), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

19.     As required under the ESA, Plaintiffs provided Defendants with 60 days' notice

of their intent to sue on April 2, 2019.  *See* 16 U.S.C. § 1540(g)(2)(A).  Defendants have not

remedied the violations described in Plaintiffs' 60-day notice.

20.     Venue is appropriate under 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e)(1)

because (1) Defendants reside in this District, (2) a substantial part of the events or omissions

giving rise to the claim occurred in this District, and (3) the lead Plaintiff resides in this District.

LEGAL BACKGROUND

I.     <u>The Endangered Species Act</u>

21.     Congress enacted the ESA to protect endangered and threatened species and the

7

habitats upon which they depend. 16 U.S.C. § 1531(b). Through the ESA, Congress declared its policy "that all Federal departments and agencies shall seek to conserve endangered species and threatened species and shall utilize their authorities in furtherance of the purposes of [the Act]." *Id.* § 1531(c)(1).

22.     The ESA's "language, history, and structure . . . indicate[] beyond doubt that Congress intended endangered species to be afforded the highest of priorities." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 174 (1978). "The plain intent of Congress in enacting [the ESA] was to halt and reverse the trend toward species extinction, whatever the cost." *Id.* at 184.

23.     The ESA provides protections to those species the U.S. Fish and Wildlife Service or NMFS designates as either "endangered" or "threatened." *See* 16 U.S.C. § 1533. A species is endangered when it "is in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6). A species is threatened if it "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

24.     Section 7 of the ESA imposes a continuing and affirmative duty on each federal agency to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species." *Id.* § 1536(a)(2).

25.     In the context of Section 7, an "action" includes "all activities or programs of any kind authorized, funded, or carried out, in whole or in part, by Federal agencies" that are within the agencies' discretionary control. 50 C.F.R. §§ 402.02, 402.03.

26.     The ESA and its implementing regulations establish an interagency consultation process to assist federal agencies in complying with their substantive duty to avoid jeopardy under the ESA. The consultation process requires an action agency, whenever it takes an action

that "may affect" a threatened or endangered species or critical habitat, to consult with the

appropriate wildlife agency—the consulting agency—to determine whether the action may cause

jeopardy.  16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14(a).  NMFS has responsibility under the

ESA for protecting and providing consultation for most marine species, including the oceanic

whitetip shark and giant manta ray.

27.     To "jeopardize the continued existence of" a species denotes "engag[ing] in an

action that reasonably would be expected, directly or indirectly, to reduce appreciably the

likelihood of both the survival and recovery of a listed species in the wild by reducing the

reproduction, numbers, or distribution of that species."  50 C.F.R. § 402.02.

28.     Agencies are required to "use the best scientific and commercial data available" to

determine whether jeopardy will result from a particular agency action.  16 U.S.C. § 1536(a)(2);

50 C.F.R. § 402.14(d).

29.     "The minimum threshold for an agency action to trigger consultation . . . is low

. . . ."  *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 496 (9th Cir. 2011).  "*Any possible*

*effect* . . . triggers the formal consultation requirement . . . ."  Interagency Cooperation—

Endangered Species Act of 1973, as Amended, 51 Fed. Reg. 19,926, 19,949 (June 3, 1986)

(emphasis added); *see also* U.S. Fish & Wildlife Serv. & Nat'l Marine Fisheries Serv.,

*Endangered Species Consultation Handbook* at xvi (1998) ("May affect [is] the appropriate

conclusion when a proposed action may pose *any* effects on listed species or designated critical

habitat.").  An agency is excused from consulting only if the agency's action will have "no

effect" on listed species.  *See* 50 C.F.R. § 402.14(a).

30.     At the conclusion of consultation, an action agency will obtain either a written

concurrence from the consulting agency that the proposed action is "not likely to adversely

affect" listed species, *id.* §§ 402.12(j), (k), 402.13(a), 402.14(b)(1), or, if the action is likely to

adversely affect listed species, a biological opinion evaluating those effects and determining

whether the action is likely to jeopardize the continued existence of the listed species, 16 U.S.C.

§ 1536(b)(3)(A); 50 C.F.R. § 402.14(h); *see also* 50 C.F.R. § 402.14(*l*).

31.     If the consulting agency concludes in the biological opinion that the proposed

action is likely to jeopardize the species, it must specify reasonable and prudent alternatives, if

any, that would avoid the likelihood of jeopardy, or specify that no such alternatives exist.

16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. § 402.14(h)(3).

32.     If the consulting agency concludes that the action is not likely to jeopardize the

continued existence of the species, but that incidental take of the threatened species will occur,

the consulting agency must produce a written "incidental take statement" that "specifies the

impact of such incidental taking on the species."  16 U.S.C. § 1536(b)(4); *see also* 50 C.F.R.

§ 402.14(i).  This requirement applies even when take of the species is not prohibited by statute.

*Ctr. for Biological Diversity v. Salazar*, 695 F.3d 893, 911 (9th Cir. 2012).  An incidental take

statement must also specify "reasonable and prudent measures" that are "necessary or

appropriate to minimize [the] impact" of such incidental take and the "terms and conditions

(including, but not limited to, reporting requirements) that must be complied with by the Federal

agency" to implement the measures.  16 U.S.C. § 1536(b)(4); 50 C.F.R. § 402.14(i)(1)–(2).  The

incidental take statement serves as a check on the agency's determination that the proposed

action's effects on the species will not jeopardize the species' continued existence.  *Salazar*, 695

F.3d at 911.

33.     The duty to consult is ongoing.  Federal agencies are required to "reinitiate"

consultation under Section 7 of the ESA in four circumstances:

(a) If the amount or extent of taking specified in the incidental take statement is exceeded;

(b) If new information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered;

(c) If the identified action is subsequently modified in a manner that causes an effect to the listed species or critical habitat that was not considered in the biological opinion; or

(d) If a new species is listed or critical habitat designated that may be affected by the identified action.

50 C.F.R. § 402.16.

34.     Compliance with the ESA's Section 7 consultation requirement is integral to fulfilling the ESA's substantive objective because the consultation process ensures that federal agencies will not cause serious, undue harm to threatened or endangered species.  *Wash. Toxics Coal. v. EPA*, 413 F.3d 1024, 1034 (9th Cir. 2005) ("The purpose of the consultation process . . . is to prevent later substantive violations of the ESA."); *Thomas v. Peterson*, 753 F.2d 754, 764 (9th Cir. 1985) (stating consultation process serves as a procedural requirement "to ensure compliance with the [ESA's] substantive provisions").

## II.     Magnuson-Stevens Fishery Conservation and Management Act

35.     Congress enacted the MSA to conserve and manage the fish populations in U.S. and international waters that provide significant natural, economic, and recreational resources for the country.  16 U.S.C. § 1801(a)(1), (b)(1).

36.     The MSA gives the Secretary direct authority to manage fisheries for "highly migratory species" in the Atlantic Ocean.  *Id.* §§ 1852(a)(3), 1854(g)(1)(E).  Highly migratory species consist of tuna species, marlin, oceanic sharks, sailfishes, and swordfish.  *Id.* § 1802(21).

37.     Pursuant to its delegated authority under the MSA, as well as the International Convention for the Conservation of Atlantic Tuna—to which the United States is a party—

NMFS has developed and implemented the HMS FMP.  50 C.F.R. § 635.1(a).  *See generally id.* pt. 635.  NMFS authorizes and manages the individual HMS Fisheries pursuant to the HMS FMP.  *See, e.g.*, *id.* § 635.19; *see also* 16 U.S.C. § 1855(d) (giving Secretary "general responsibility to carry out any fishery management plan").

## FACTUAL BACKGROUND

**I.**     **Oceanic Whitetip Shark and Giant Manta Ray Populations Have Precipitously Declined Due Primarily to Commercial Fishing.**

38.     Oceanic whitetip sharks are top predators of the open ocean and play an important role in maintaining a healthy ecosystem.  They are long-lived, living up to 36 years.  Although found in tropical and subtropical waters across the world, oceanic whitetip shark populations have plummeted due to fishing in all regions the shark is found—by as much as 88% from historical numbers in some regions.

39.     Giant manta rays are also found scattered across the world's tropical and subtropical oceans, in highly fragmented populations.  The rays are best known for their massive wingspan, which can reach up to 29 feet.  Similar to the oceanic whitetip shark, giant manta ray populations have declined by as much to 95% in some regions due to fishing.

40.     Commercial fishing by U.S. and foreign national fleets has been the main driver of these species' significant population declines.  Oceanic whitetip sharks are targeted for their high-value fins and giant manta rays for their gill plates (filter-feeding structures).  Both targeted and incidental capture of oceanic whitetip sharks and giant manta rays in each ocean basin (Atlantic, Pacific, and Indian) continue to threaten each species' long-term survival.

41.     Bycatch from U.S. commercial fisheries subject to the HMS FMP poses a major threat to the oceanic whitetip shark and giant manta ray in the Atlantic and the Gulf of Mexico.  Certain U.S. fisheries under the HMS FMP also target oceanic whitetip sharks directly.

42.     Both species possess life history traits that make them particularly vulnerable to this fishing pressure.

43.     Oceanic whitetip sharks mature late in age and have low to moderate reproductive productivity.  Females generally do not reach maturity until they are 9 years of age and only give birth every other year.

44.     Giant manta rays also are slow-growing, with very low reproductive rates. Females give birth to only a single pup every two to three years.

45.     In addition, the species' behaviors further expose them to bycatch and targeted fishing.  Oceanic whitetip sharks are usually found in surface waters where they are more likely to encounter fishing gear.  Giant manta rays often congregate where they may be caught in large numbers.

## II.     NMFS Has Listed the Oceanic Whitetip Shark and Giant Manta Ray as Threatened Species under the ESA.

46.     Due to the severe population declines and ongoing threats these species experience, Plaintiff Defenders of Wildlife filed separate petitions to NMFS to list the oceanic whitetip shark and giant manta ray under the ESA in 2015.

47.     In January 2018, NMFS listed both species as threatened, recognizing the historical and ongoing fishing-related overutilization and mortality of these species.  83 Fed. Reg. 4153, 4153, 4162 (Jan. 30, 2018) (codified at 50 C.F.R. § 223.102(e)) (citing "overutilization from fishing pressure and inadequate regulatory mechanisms" as primary reasons for listing the oceanic whitetip shark); 83 Fed. Reg. 2916, 2920–21, 2924 (Jan. 22, 2018) (codified at 50 C.F.R. § 223.102(e)) (citing targeted fishing and bycatch-induced mortality as primary reasons for listing the giant manta ray).

**III.** **NMFS Continues to Authorize HMS Fisheries that Catch and Kill Oceanic Whitetip Sharks and Giant Manta Rays.**

48.     NMFS continues to authorize HMS Fisheries that catch and kill oceanic whitetip sharks and giant manta rays.

49.     HMS Fisheries governed by NMFS's HMS FMP include, among others, the pelagic longline fishery, shark bottom longline fishery, shark drift gillnet fishery, shark recreational fishery, swordfish handgear fishery, tuna purse seine fishery, tuna recreational fishery, and tuna handgear fishery.  *See* 50 C.F.R. § 600.725(v)(IX).

50.     NMFS authorizes these individual HMS Fisheries on an ongoing basis.  *See, e.g.*, *id.* § 635.4.  *See generally id.* pt. 635.

51.     NMFS's continued authorization of individual HMS Fisheries results in bycatch of oceanic whitetip sharks and giant manta rays.

52.     For instance, the pelagic longline fishery catches and often inevitably kills substantial numbers of oceanic whitetip sharks and giant manta rays through bycatch.  As many as 75% of oceanic whitetip sharks bycaught in longlines die before reaching the vessel.

53.     Oceanic whitetip sharks are also caught as bycatch and injured or killed by the shark bottom longline fishery, the shark drift gillnet fishery, the shark recreational fishery, the swordfish handgear fishery, the tuna purse seine fishery, the tuna recreational fishery, and the tuna handgear fishery.

54.     The shark bottom longline fishery, the directed shark drift gillnet fishery, the shark drift net fishery, and other gillnet fisheries in the waters of the Southeast and Gulf of Mexico also catch and kill giant manta rays as bycatch.

55.     In addition, NMFS's authorization of certain recreational and non-longline commercial fisheries results in the *direct* targeting and killing of oceanic whitetip sharks.  *See*

50 C.F.R. §§ 635.22(c)(2) (setting recreational quota for oceanic whitetip sharks), 635.24(a)(4) (allowing commercial fishers to retain pelagic sharks, which include oceanic whitetip sharks), 635.27(b)(1)(iii)(D) (setting commercial quota for pelagic sharks); 81 Fed. Reg. 96,304, 96,319 (Dec. 29, 2016) (describing oceanic whitetip shark management framework).

56.     The best available scientific information shows that direct catch and bycatch of oceanic whitetip sharks and bycatch of giant manta rays in HMS Fisheries have substantial adverse effects on—or, at the very least, "may affect"—these species.  NMFS is required to complete consultation before continuing to authorize any HMS Fishery that may affect the oceanic whitetip shark or giant manta ray.

**IV.     NMFS Has Not Completed ESA Consultation Regarding the Effects of HMS Fisheries on the Oceanic Whitetip Shark or Giant Manta Ray.**

57.     NMFS listed the oceanic whitetip shark and giant manta ray under the ESA more than a year and a half ago.  In the period since those listings became effective, NMFS has continued to authorize individual HMS Fisheries that may affect these threatened species.

58.     NMFS had begun consultation on the oceanic whitetip shark for all HMS Fisheries by November 2017—before the species was listed.  By December 2017, NMFS had decided to include the giant manta ray in its consultation on the non-longline HMS Fisheries.

59.     NMFS is both the action agency and the consulting agency in these consultations. Specifically, NMFS's Office of Sustainable Fisheries is the action agency that authorizes and manages the HMS Fisheries, and NMFS's Office of Protected Resources is the consulting agency.

60.     As of December 2017, NMFS had begun developing an HMS pelagic longline biological opinion and had submitted a draft biological opinion for non-longline HMS Fisheries to the agency's Office of General Counsel.  At that time, NMFS expected to complete the HMS

pelagic longline consultation by "Early summer 2018 (~June)," and to complete the non-longline

HMS Fisheries consultation by February 2018.

61.     It is now more than a year after NMFS expected to complete the consultations,

but the agency has not completed consultation on any individual HMS Fishery's effects on the

oceanic whitetip shark or giant manta ray.

**CLAIM FOR RELIEF**

**COUNT I – VIOLATION OF ESA SECTION 7(a)(2) DUTIES TO COMPLETE CONSULTATION AND ENSURE AGAINST JEOPARDY (16 U.S.C. § 1536(a)(2))**

62.     Paragraphs 1 through 61 are hereby realleged and incorporated by reference.

63.     Section 7(a)(2) of the ESA imposes a substantive duty on each federal agency to

"insure that any action authorized, funded, or carried out by such agency is not likely to

jeopardize the continued existence of any endangered species or threatened species or result in

the destruction or adverse modification of" critical habitat.  16 U.S.C. § 1536(a)(2).  To comply

with this duty, the ESA and its implementing regulations require NMFS's Office of Sustainable

Fisheries to complete consultation with NMFS's Office of Protected Resources before taking any

action that "may affect" a listed species.  *Id.*; 50 C.F.R. § 402.14(a).

64.     NMFS's authorization of each individual HMS Fishery constitutes a federal

agency "action" under the ESA.  50 C.F.R. §§ 402.02, 402.03; *Greenpeace v. NMFS*, 80 F. Supp.

2d 1137, 1145 (W.D. Wash. 2000) (stating FMPs and their implementation "constitute on-going

agency action under the ESA").

65.     NMFS's authorizations of the HMS Fisheries result in bycatch of oceanic whitetip

sharks and giant manta rays, and, in some cases, targeted catch of oceanic whitetip sharks.

Therefore, the authorization of each fishery "may affect" the threatened oceanic whitetip shark

and giant manta ray.  16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14(a).

66.     Accordingly, NMFS is required to complete Section 7 consultation on the HMS Fisheries' effects on the oceanic whitetip shark and giant manta ray prior to authorizing the Fisheries.  NMFS also has a substantive duty as the action agency authorizing the HMS Fisheries to ensure that its actions are not likely to jeopardize the continued existence of the oceanic whitetip shark or giant manta ray. 16 U.S.C. § 1536(a)(2).

67.     NMFS has continued authorizing the HMS Fisheries in the period since it listed the oceanic whitetip shark and giant manta ray as threatened under the ESA.  However, NMFS has not completed consultation or obtained a biological opinion on the HMS Fisheries' effects on either species.

68.     NMFS therefore is in violation of its duties under the ESA and its implementing regulations to complete the required consultation and ensure its authorizations of the HMS Fisheries do not jeopardize the continued existence of the threatened oceanic whitetip shark or giant manta ray.  *Id.*; 50 C.F.R. § 402.14.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

1.     Declare that NMFS's continuing authorizations of the HMS Fisheries absent completed Section 7 consultations regarding the oceanic whitetip shark and giant manta ray violate the procedural and substantive requirements of ESA and its implementing regulations, 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14;

2.     Order NMFS to complete the required consultations on each HMS Fishery and publish final biological opinions within 90 days, in accordance with 50 C.F.R. § 402.14(e);

3.     Award Plaintiffs their attorney fees and costs in this action pursuant to 16 U.S.C. § 1540(g)(4) and 28 U.S.C. § 2412; and

4.     Grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 1st day of August, 2019.

/s/ Stephen D. Mashuda
Stephen D. Mashuda (DC Bar No. WA0005)
Christopher D. Eaton (*pro hac vice* pending)
EARTHJUSTICE
705 Second Ave., Suite 203
Seattle, WA 98104
206-343-7340 Telephone
206-343-1526 Fax
smashuda@earthjustice.org
ceaton@earthjustice.org

Andrea Treece (*pro hac vice* pending)
EARTHJUSTICE
50 California St., Suite 500
San Francisco, CA 94111
415-217-2000 Telephone
415-217-2040 Fax
atreece@earthjustice.org

*Attorneys for Plaintiffs Defenders of Wildlife and Center for Biological Diversity*